## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Ruth W. Williams | * | |
| 2526 Caves Road | | |
| Owings Mills, MD 21117 | * | |
| Plaintiff, | * | |
| vs. | * | Case No. AMD 06-CV-1048 |
| Gilman School | * | |
| 5407 Roland Avenue | | |
| Baltimore, MD 21210 | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### AMENDED COMPLAINT

### I.  PRELIMINARY STATEMENT

1.  This action seeks compensatory damages and attorney's fees and costs for the violations by Defendant of Plaintiff's various federally-protected rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1), the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 *et seq.*, and for violation of her rights under the laws of the State of Maryland.

### II.  JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Secs. 1331 and 1334 and to hear and decide the pendant claims arising under the laws of the State of Maryland.

3.  Venue is proper in the Northern District of Maryland because the causes of action in this Complaint occurred in Baltimore City, situated within said District.

### III.  PARTIES

4. Plaintiff Ruth W. Williams is a female, born on May 1, 1937, and is employed by Defendant Gilman School.

5. Defendant Gilman School is a Maryland corporation with a principal business address of 5407 Roland Avenue, Baltimore, MD 21210.

### IV.   ADMINISTRATIVE PREREQUISITES

6. On December 10, 2004, Ms. Williams filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of gender and age.

7. On January 28, 2006, Ms. Williams received a determination letter from the EEOC notifying her of her right to bring a civil action within ninety days from the date of the receipt of that letter.

### V.   STATEMENT OF FACTS

8. Ms. Williams has received a Bachelor of Arts in Mathematics from Sweet Briar College in 1959, a Master of Education from Goucher College in 1967, and a Master of Business Administration from Loyola College in 1992. She has also completed additional coursework in mathematics, counseling, accounting, computers, and education at various universities and institutions, including Pepperdine University, Johns Hopkins School of Hygiene and Public Health, the Key Curriculum Workshop in Berkley, California, the Stanley H. King Counseling Workshop, the Taft Educational Center, Dana Hall, and Johns Hopkins University.

9. Ms. Williams began her teaching career in 1959 as a Mathematics Teacher at Roland Park Country School in Baltimore, Maryland. Plaintiff continued her teaching

career at Bear Creek Elementary School in Dundalk, Maryland as a First Grade Teacher in 1967. Later that same year, Plaintiff joined Bryn Mawr School in Baltimore, Maryland as an Elementary Mathematics Specialist and a Department Chairman. In 1968, Ms. Williams began lecturing at the post-secondary level at Goucher College in Towson, Maryland on elementary mathematics curriculum as part of the Masters in Education program and the undergraduate programs. Ms. Williams continued to teach at Goucher College for 15 years.

10. In 1967, Ms. Williams was hired as a mathematics teacher and tutor for the summer session at Gilman School. In 1969, Ms. Williams became a mathematics consultant to Gilman Lower School. In 1970, Ms. Williams became the elementary mathematics chairman and coordinator at Gilman School, selecting the curriculum, training teachers, and leading parent workshops. She served in this capacity for 9 years.

11. In 1979, Ms. Williams joined Garrison Forest School in Garrison, Maryland as a Mathematics Teacher. During her time at Garrison Forest School, she was a Member of the Academic Advisory Council of AIMS, a teacher trainer, a leader of teacher workshops, a student advisor, and a new teacher mentor. Ms. Williams returned to Roland Park Country School in 1994 as a Mathematics Teacher for the Upper School and a Ninth Grade Advisor.

12. In 1995, Ms. Williams returned to Gilman School as a Mathematics Teacher in the Upper School, and continues in this position today. Ms. Williams also began serving as an advisory teacher for eighth grade algebra at Calvert School Educational Services in Hunt Valley, Maryland concurrently with her time at Gilman School, and she continues in this position today.

13. In addition to her education and teaching experience, Ms. Williams has served as a curriculum writer for a mathematics textbook for the eighth grade entitled *Calvert Math*, 2002. She has also won teaching awards from MIT and Loyola College.

14. When Ms. Williams returned to Gilman School in 1995, she was hired at an annual salary of $35,000. In 1996, when Ms. Williams met with Archibald Montgomery, then Headmaster of Gilman School, she was told that the school made a "miscalculation" in her salary. Ms. Williams' pay was then adjusted to $49,876, a large jump on Gilman School's pay scale. Her 1996 salary was set in the range of pay for a Senior Teacher. By 1999, Ms. Williams was receiving a salary of $57,685 per year, which according to the Faculty Salary Scale, credited her with 25 years of teaching experience, although in fact Ms. Williams had more than 35 years of teaching experience at that time.

15. In 2000, Ms. Williams complained to the Headmaster about the inconsistency between her salary and the number of years of experience appearing on the Faculty Salary Scale. The year after Ms. Williams complained, Gilman School removed the column entitled "Years" from its Faculty Salary Scale. In the following years, Ms. Williams continued to receive an annual salary for a teacher with approximately ten years less experience than she possesses. In 2004, Ms. Williams complained to the current Headmaster about the discriminatory method in which the Faculty Salary Scale was applied.

16. During Ms. Williams' employment as a Mathematics Teacher, she became aware of different treatment by Headmaster Jon McGill of female employees than that given to male employees.

4

17.     During Ms. Williams' employment, she noticed a disturbing pattern in the lack of advancement opportunities available to female employees. Plaintiff noticed that there were no female heads of departments, and the highest level female at Gilman School was head of the Upper School.

18.     Ms. Williams also learned that while her experience was being downgraded on the Faculty Salary Scale, male employees were having their salaries scaled up from their actual years of experience. For example, upon information and belief, a new male college graduate with no experience and no advanced degrees was started on the scale above the level of a beginning teacher.

19.     Ms. Williams is the only female member of the mathematics department. She is the only person asked to teach a different class every year in the department, and all male members of the department are allowed to continue to teach the same classes. Each new class assignment involves considerable preparation time.

20.     Ms. Williams is the only member of the mathematics department who was not informed of a textbook change on a timely basis. Ms. Williams spent her summer preparing her classes using a different textbook, while all involved male members of the department knew in advance that a new textbook was being introduced.

21.     Ms. Williams was asked to cover for another teacher while that teacher was out on medical leave. She was not paid for covering this class, but, upon information and belief, male employees have been paid when they cover classes.

22.     Ms. Williams was asked to serve on the judiciary committee for a very sensitive case involving a student mooning a young, female teacher. She was told that they wanted a female presence on the committee because of the nature of the incident.

5

The victim of the mooning was so upset that she missed a day of school after the incident. During Ms. Williams' service on the board, she encouraged the other members, all male, to consider how the victim felt. Some of the male board members considered the incident as though it were a joke, and stated that "guys moon each other all the time."

23. The concerns of Ms. Williams described in Paragraphs 16, 17, 18, 19, 20, 21, and 22 of this Complaint prompted her to inquire of her co-workers as to the basis for her observations, and as to possible solutions. These individuals confirmed that there was a factual basis for her concerns. A retired male teacher described Gilman School as a "good ol' boy network." Another teacher commented, "I would rather be a black man at Gilman than a white woman." She was further told that the disparate treatment of female teachers had increased upon the assumption by Jon McGill of the Headmaster position. In fact, the Gilman School Gender Committee was not continued when Jon McGill arrived at the school.

24. During her employment as a teacher at Gilman School, Ms. Williams performed all of the functions of her role, was subject to no counseling as to any perceived deficiencies in her performance, and in fact received stellar feedback from her peers and students.

25. In June 2001, an announcement was made to the faculty that the Mathematics Department Chair was retiring in 2002, asking anyone interested in applying for the position to submit an application. The plan was to select an internal candidate in the fall, so that the transition would be smooth. Ms. Williams expressed her wish to have greater responsibility in the department and assume the position. It is the consistent practice of the school to fill vacancies in Department Chair positions in-house

6

with the most senior person in the department assuming the position. Ms. Williams was the only applicant of the department with a degree in mathematics, and she had the most years of teaching experience. Additionally, Ms. Williams was the only teacher qualified to teach the advanced calculus course, a course traditionally taught by the Department Chair.

26. In the fall, Ms. Turner told Ms. Williams that for the first time, Gilman School intended to perform a national search for candidates for the position. The national search, however, involved interviewing only one external male candidate. Ms. Turner also interviewed male members of the math department to see whom they wanted in the position, whether the male members were returning in the fall or not. In her years of employment by Gilman School, Ms. Williams remembers no instance in which Gilman School conducted a "national search" for a Department Chair position or interviewed all members of a department.

27. The Department Chair position was filled by the promotion of a white male less than forty years of age. He did not have a degree in mathematics, and he had taught for less than years.

28. The current wage structure of the faculty remains discriminatory on the basis of gender in that, upon information and belief, male teachers are compensated at a higher level than are female teachers.

29. In order to confirm or deny her belief that the work environment at Gilman School involved substantial gender discrimination, Ms. Williams sought the opinion of others familiar with this work environment, with the result that, without limitation, other employees have consistently expressed their belief that women are

7

victims of gender-based discrimination at Gilman School. In these discussions, Ms. Williams has repeatedly heard the individuals speaking with her, and without her solicitation, use the term "sexist" to describe the Gilman School environment.

30. The work environment at Gilman School also includes age-based discrimination. Younger employees have their experience level "bumped up" on the Faculty Salary Scale while older workers have their experience downgraded on the scale. Additionally, Ms. Williams has repeatedly been asked, "How much longer are you going to teach? Why don't you retire?"

31. Ms. Williams has been treated differently since she filed her complaint with the EEOC. When she attended a school party after she filed, she went to say "hello" to the Headmaster. He turned and walked away from her when she approached. Additionally, other colleagues are not responding to Ms. Williams in the same manner as before she filed.

32. Defendant acted recklessly or intentionally and without regard for Ms. Williams' legal rights in its treatment of her.

33. Defendant acted deliberately and intentionally to discriminate against Ms. Williams and deprive her of her legal rights.

34. As a direct and proximate result of Defendant's conduct as set forth above, Ms. Williams has suffered loss of compensation, loss of fringe benefits, loss of the opportunity to be able to achieve advancement in the employment in which she has been engaged for numerous prior years, loss of self esteem, and loss of time and money endeavoring to protect herself from Defendant's unlawful conduct, including costs and attorneys' fees.

35. Also, as a direct and proximate result of Defendant's conduct as set forth above, Ms. Williams has suffered and continues to suffer mental and emotional harm, due to the unlawful conduct of Defendant.

## VI.     FIRST CLAIM FOR RELIEF

(Title VII- Gender Discrimination)

36. Plaintiff incorporates by reference all prior allegations.

37. By discriminating against Ms. Williams in the paying of her wages and by restricting her promotional opportunities on the basis of her gender, Defendant has violated Title VII of the Civil Rights Act of 1964.

## VII.    SECOND CLAIM FOR RELIEF

(Equal Pay Act)

38. Plaintiff incorporates by reference all prior allegations.

39. By failing to pay Plaintiff wages equal to male faculty for equal work, Defendant has violated the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1).

## VII.    THIRD CLAIM FOR RELIEF

(Age Discrimination in Employment Act)

40. Plaintiff incorporates by reference all prior allegations.

41. By treating Plaintiff differently than similarly situated younger employees, Defendant has violated the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 *et seq.*, and is liable to Plaintiff.

42. As a result of Defendant's conduct, Plaintiff has been damaged.

## VIII.   FOURTH CLAIM FOR RELIEF

(Maryland Anti-Discrimination Law)

9

43. Plaintiff incorporates by reference all prior allegations.

44. By discriminating against Plaintiff in the paying of her wages, by restricting her promotional opportunities on the basis of gender, Defendant has violated Maryland's anti-discrimination law, Article 49-b.

### IX. FIFTH CLAIM FOR RELIEF

(Maryland Equal Pay for Equal Work)

45. Plaintiff incorporates by reference all prior allegations.

46. By failing to pay Plaintiff wages equal to male faculty for equal work, Defendant has violated the Maryland Equal Pay for Equal Work, Title 3, Subtitle 3.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant including the following:

A. Declare Defendant's conduct to be a violation of Plaintiff's rights;

B. Enjoin Defendant from engaging in such conduct;

C. Award Plaintiff back pay and fringe benefits;

D. Award Plaintiff compensatory, multiple, and punitive damages;

E. Award Plaintiff costs, attorney fees and interest; and,

F. Grant such other relief as this court may deem just and proper.

Respectfully submitted,

_____/s/_____
Joyce E. Smithey
Bar Number 27531

>Evert Weathersby Houff
>Suntrust Bank Building
>120 E. Baltimore Street, Suite 1300
>Baltimore, MD 21202
>Phone No. (443) 573-8500
>Fax No. (443) 573-8501

## JURY DEMAND

A trial by jury is hereby demanded.

>_____/s/_____
>Joyce E. Smithey

## Certificate of Service

I certify that a true and correct copy of the foregoing Amended Complaint was filed electronically through the Court's CM/ECF system on this 3rd day of July 2006 and served on Steven D. Frenkil and Stephanie K. Baron, Miles & Stockbridge P.C., 10 Light Street, Baltimore, MD 21202.

>_____/s/_____
>Joyce E. Smithey